CCC:MRM
F. #2020R00902

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUL 27 2022   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

RAMI SAAB,
      also known as "Rami Hasan,"

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

INDICTMENT

Cr. No. **CR  22  344**

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1),
982(b)(1), 1014, 1040(a)(2), 1040(b)(1),
1343, 1349, 1956(h), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., §
2461(c))

**BROWN, J.**

**WICKS, M.J.**

THE GRAND JURY CHARGES:

INTRODUCTION

      At all times relevant to this Indictment, unless otherwise indicated:

The COVID-19 Pandemic in the United States

        1.     In or about December 2019, a novel coronavirus, SARS-CoV-2 (the

"coronavirus") caused outbreaks of the coronavirus disease COVID-19 that spread globally.   On

or about January 31, 2020, the Secretary of Health and Human Services declared a national

public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and

within the United States.   On or about March 11, 2020, the Director-General of the World

Health Organization characterized COVID-19 as a pandemic.   On or about March 13, 2020, the

President of the United States issued Proclamation 9994 declaring a national emergency

beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United

States.

The Paycheck Protection Program

2.      On or about March 27, 2020, the President signed into law the

Coronavirus Aid, Relief, and Economic Security ("CARES") Act.   The CARES Act was a

federal law designed to provide emergency financial assistance to the millions of Americans who

were suffering the economic effects caused by the COVID-19 pandemic.   One source of relief

provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to

small businesses for job retention and certain other expenses, through a program referred to as

the Paycheck Protection Program ("PPP").   In or around April 2020, Congress authorized over

$300 billion in additional PPP funding.

3.      To obtain a PPP loan, qualifying businesses were required to submit a PPP

loan application, which was signed by an authorized representative of the business.   The PPP

loan application required recipient businesses, through an authorized representative, to

acknowledge the program rules and make certain affirmative certifications to establish eligibility

for the PPP loan.   For example, in the PPP loan application, recipient businesses, through an

authorized representative, were required to state, among other things, their average monthly

payroll expenses and number of employees.   These figures were used to calculate the amount of

money the businesses were eligible to receive under the PPP.   The recipient businesses were

also required to provide documentation supporting the information contained in the PPP loan

application.

4.      PPP loan proceeds were required to be used by the recipient businesses on

certain permissible expenses, to wit: payroll costs, interest on mortgages, rent and utilities.   The

PPP allowed the interest and principal on a PPP loan to be entirely forgiven if the recipient

businesses spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain percentage for payroll costs.

5.     The PPP was overseen by the Small Business Administration ("SBA"), which had authority over all PPP loans.   Individual PPP loans, however, were issued and approved by private lenders, which received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

The Defendant and His Fraud Scheme

6.     The defendant RAMI SAAB, also known as "Rami Hasan," was a resident of Glen Cove, New York.   SAAB was associated with numerous corporate entities (the "Subject Entities"), through which he committed the fraud described herein.

7.     On or about and between June 1, 2020 and May 31, 2021, both dates being approximate and inclusive, the defendant RAMI SAAB engaged in a scheme to defraud the SBA and several financial institutions administering the PPP program of federal COVID-19 emergency relief funds meant for distressed small businesses.   It was a part of the scheme to defraud that SAAB submitted, or caused to be submitted, at least six online loan applications to obtain funds through the PPP programs for the Subject Entities.   It was further a part of the scheme to defraud that these loan applications and certain supporting documentation contained materially false and fraudulent information, including, but not limited to, the Subject Entities' number of employees, payroll costs and intended use of the loan proceeds, all of which was specifically designed to mislead the SBA and financial institutions administering the PPP program into disbursing various loans, which they did.

8.     In total, on or about and between June 1, 2020 and May 31, 2021, both dates being approximate and inclusive, as a result of this fraudulent scheme, the SBA and

financial institutions administering the PPP programs wire-transferred sums totaling approximately $3,593,290 in PPP loans for the Subject Entities to bank accounts that the defendant RAMI SAAB had access to and control over at bank branches in the Eastern District of New York and elsewhere.

9.      Shortly after receiving these loan proceeds, the defendant RAMI SAAB, together with others, engaged in numerous financial transactions designed to conceal the true nature and source of the funds, including electronically transferring certain of the loan proceeds between various bank accounts to which SAAB had access and control.   SAAB then utilized the laundered loan proceeds to enrich himself and others, including by personally making cash withdrawals and transferring funds to associates overseas.

COUNT ONE
(Disaster Relief Fraud)

10.     The allegations contained in paragraphs one through nine are realleged and incorporated as if fully set forth in this paragraph.

11.     On or about and between June 1, 2020 and May 31, 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RAMI SAAB, also known as "Rami Hasan," together with others, did knowingly and intentionally make one or more materially false, fictitious, and fraudulent statements and representations, and make and use one or more false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and representations, in connection with a procurement of property and services related to an emergency declaration under Section 501 of the Stafford Act, to wit: Proclamation 9994 of March 13, 2020 by the President of the United States of America Declaring a National Emergency Concerning a Novel

Coronavirus Disease (COVID-19) Outbreak, which benefits were authorized, transported, transmitted, transferred, disbursed and paid in and affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1040(a)(2), 1040(b)(1), 2 and 3551 et seq.)

## COUNT TWO
(False Statements to the Small Business Administration)

12.     The allegations contained in paragraphs one through nine are realleged and incorporated as if fully set forth in this paragraph.

13.     On or about and between June 1, 2020 and May 31, 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RAMI SAAB, also known as "Rami Hasan," together with others, did knowingly make one or more false statements and reports for the purpose of influencing the action of the SBA in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan and insurance agreement and application for insurance and a guarantee, and any change and extension of any of the same, by renewal, deferment of action or otherwise, and the acceptance, release and substitution of security therefor, to wit: SAAB provided false information in fraudulent PPP loan applications to induce the SBA to approve loans to the Subject Entities.

(Title 18, United States Code, Sections 1014, 2 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Commit Wire Fraud)

14.     The allegations contained in paragraphs one through nine are realleged and incorporated as if fully set forth in this paragraph.

15.     On or about and between June 1, 2020 and May 31, 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RAMI SAAB, also known as "Rami Hasan," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the SBA and several financial institutions administering the PPP program of federal COVID-19 emergency relief funds meant for distressed small businesses, and to obtain money and property from the SBA and the financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT FOUR
(Wire Fraud)

16.     The allegations contained in paragraphs one through nine are realleged and incorporated as if fully set forth in this paragraph.

17.     On or about and between June 1, 2020 and May 31, 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RAMI SAAB, also known as "Rami Hasan," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the SBA and several financial institutions administering the PPP program, and to obtain money and property from the SBA and the financial institutions, by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted, by means of wire communication in interstate commerce,

one or more writings, signs, signals and pictures, to wit: an electronic transmission of fraudulent

PPP loan applications and falsified supporting documents for the Subject Entities.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT FIVE
### (Conspiracy to Commit Money Laundering)

18.     The allegations contained in paragraphs one through nine are realleged and

incorporated as if fully set forth in this paragraph.

19.     On or about and between June 1, 2020 and May 31, 2021, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

RAMI SAAB, also known as "Rami Hasan," together with others, did knowingly and

intentionally conspire to conduct one or more financial transactions in and affecting interstate

and foreign commerce, including deposits, transfers and withdrawals of funds and monetary

instruments, which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud,

in violation of Title 18, United States Code, Section 1343, knowing that the property involved in

the financial transactions represented the proceeds of some form of unlawful activity, and

knowing that the transactions were designed in whole and in part to conceal and disguise the

nature, location, source, ownership and control of the proceeds of specified unlawful activity,

contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS TWO THROUGH FOUR

20.     The United States hereby gives notice to the defendant that, upon his

conviction of any of the offenses charged in Count Two through Count Four, the government

will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and

Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

21.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FIVE

22.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

23.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

*Edward J. Say*

FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*Carolyn Pokorny*

By: _____

Assistant U.S. Attorney